IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Terrie Dawson Durant, | ) | C/A No. 3:13-626-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| SAFE Federal Credit Union, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff, Terrie Dawson Durant, filed this employment case asserting violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Equal Employment Opportunity Act, 42 U.S.C. §§ 2000e, et seq.; violation of 42 U.S.C. § 1981; and state law claims including violations of the South Carolina Human Affairs Law, S.C. Code Ann. §§ 1-13-10 et seq., against her former employer, SAFE Federal Credit Union ("SAFE"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 33.) Durant filed a response in opposition (ECF No. 39), and the defendant replied. (ECF No. 41.) Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Durant, to the extent they find support in the record. Durant, who is African American, is a former employee of SAFE who began as a teller and ultimately worked her way up to Branch Manager. While Durant was Branch Manager of SAFE's Bishopville branch, she experienced what she perceived to be

racially discriminatory and harassing treatment by her supervisor, Michael Baker, who is Caucasian. Durant contends that Baker sent her a harassing e-mail on August 15, 2011 berating her for failing to attend a community event. She also perceived that Baker spoke to her in a demeaning and condescending tone, specifically in front of her Caucasian counterparts at monthly sales meetings and other joint meetings. Additionally, Durant asserts that Baker made derogatory statements about African Americans; specifically, she states that one day when she was inquiring of Baker how he wanted her to handle depleted cash reserves at her branch when customers cashed large checks during tax refund season, Baker "went off on a rant" about how "those people" received large tax refunds when they did not pay sufficient taxes. (Durant Dep. 136-137, ECF No. 39-1 at 13-14.) Durant perceived this comment to be directed toward African Americans because the residents of Lee County, where her branch was located, are predominately black.

On February 9, 2012, Durant called Paul Hilton,[1] SAFE's Vice President of Human Resources, in tears and asked Hilton to meet her at the Bishopville branch so she could speak with him. When Hilton arrived, Durant complained to him about Baker's treatment of her, including the August 2011 e-mail and that Baker required that she submit a daily report that Caucasian managers were not required to submit. Although Hilton denies this, Durant testified in her deposition that she specifically told Hilton that she felt Baker was treating her differently because she was black. Hilton then sent Durant home for the day because she was so upset.

Later that day, Hilton called Durant and instructed her to come into the office the next morning for a meeting to discuss the situation. In addition to Hilton and Durant, Baker was present at the meeting, as well as Penny Pratt, Vice President of Administration. Hilton informed Durant

---

[1] Hilton is white.



that after consulting with Baker and Pratt, he was offering her a position as a Member Service Center Specialist II. This was a demotion from Branch Manager. Durant replied that the offer was "a slap in the face" and initially declined it. (Durant Dep. at 237-38, ECF No. 39-1 at 22-23.) Hilton then sent Durant to the break room while he consulted with Beverly Gagne, SAFE's Chief Executive Officer. When Hilton informed Gagne that Durant did not want the MSC Specialist II position, Gagne called Durant and the others to the board room. According to Durant, Gagne criticized Durant's performance as Branch Manager and asked her what she was going to do about the MSC Specialist II position. Durant replied that she would go back to her current position and wait to apply for something else, but Gagne informed her that "[Hilton] said you're not going back to the branch." (Id. at 243, ECF No. 39-1 at 27.) Gagne further told Durant, "Well, I just don't see [Baker] doing any of the things that you've said he's done." (Id. at 240, ECF No. 39-1 at 25.)

After leaving the meeting and perceiving that her choice was between the MSC Specialist II position or unemployment, Durant ultimately informed Hilton she would accept the demotion. Shortly thereafter, Durant took leave under the Family Medical Leave Act due to pregnancy complications. She returned to work at SAFE briefly following her maternity leave in the MSC Specialist II position, then left SAFE's employment completely in February of 2013.

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish



the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.      Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. A plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the



decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.      Durant's Claims**

   **1.      Race Discrimination**

Durant relies on the McDonnell Douglas framework to establish a claim of race discrimination. Generally, to show a *prima facie* case, a plaintiff must establish: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).



In its motion, SAFE challenges Durant's ability to establish several of these prongs. In analyzing the element of satisfactory job performance, a plaintiff's performance is evaluated at the time of the alleged adverse action and courts have recognized that it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (Title VII) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans, 80 F.3d at 960-61). An employer's expectations of its employees are considered "legitimate" when they are honestly held; whether the employee agrees with those expectations is not the test. Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." Warch, 435 F.3d at 518. As long as the requirements imposed are *bona fide* expectations, it is not the court's province to determine whether an employer demands too much of its workers. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) (Posner, J.).

SAFE bases its contention that Durant was not meeting its legitimate expectations on its assertions that Durant's annual performance reviews showed decreasing scores and were lower than other branch managers, that under her management the Bishopville branch had poor sales numbers, and that other employees complained about Durant. It further offers evidence that Baker was contemplating demoting Durant to a Member Service Representative position—the position Durant had held previously before being promoted to Branch Manager—as early as January 2012, prior to Durant's complaints about him to Hilton.



Durant argues that her performance reviews from 2008-2010 indicated "quality performance" and that she never received a poor performance evaluation until after she complained about Baker. However, her performance review for 2011 illustrates that the highest score she received that year in the Essential Job Responsibilities component of the review was a 2.17 of 5.00, indicating that she "need[ed] immediate improvement" with regard to that criterion. On all of the other criteria in the Essential Job Responsibilities section, Durant scored even lower. Even accepting Durant's implication that Baker downgraded her scores with discriminatory or retaliatory animus, the review of her performance for the year 2011 shows poor scores with regard to achievement of *objective* goals that were set more than a year before Durant's complaints about Baker and that would be unaffected by Baker's subjective scoring.[2] For example, Durant's performance review was based in part on meeting "branch goals in savings, lending, account relationships, transactions, and profitability," and in 2011 Durant received the lowest possible score of "1" in the annual goal categories for loans, credit cards, and MRCs. (Performance Review, ECF No. 39-3 at 39-45; Branch Manager I Job Description, ECF No. 33-2 at 36; Durant Dep. at 71, 73-74, ECF No. 33-1 at 20, 22-23.) Durant has offered no evidence that these objective criteria were not legitimate goals or that they were a "sham designed to hide [SAFE's] discriminatory purpose." Warch, 435 F.3d at 518. Accordingly, she cannot establish a *prima facie* case of race discrimination because she cannot establish that she was meeting SAFE's legitimate expectations at the time.

Additionally, most of the actions Durant submits as being racially discriminatory do not constitute adverse employment actions as a matter of law, thus failing the third prong of the *prima*

---

[2] The court observes that in the Organizational Values component of the review, which appears to involve more subjective scoring by Baker, she received higher scores. This undermines any inference that Baker downgraded her with retaliatory or discriminatory animus.



*facie* test. With regard to a disparate treatment claim, an adverse employment action is "a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.' " Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)). It must constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different job responsibilities, or a decision causing a significant change in benefits. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998). The August 15, 2011 e-mail, which Durant describes as "harassing" and "condescending," is actually objectively fairly mild. (See Email, ECF No. 33-2 at 85-87 (in which Baker states: "[Y]ou were aware of these challenges and the requirements of this position . . . I need to see more commitment from you to do what it takes for your branch to be more successful . . . that is not happening now . . . things are falling through the cracks . . . ultimately, you are responsible . . . [t]he ball is in your court . . . I am here to support you but only if I am getting your best effort.") In any event, scolding, admonishment, and condescension do not constitute adverse employment action as a matter of law. See, e.g., Johnson v. Danzig, No. 99-2614, 2000 WL 458887, at *2 (4th Cir. 2000) (stating that plaintiff's claims of racial discrimination fail because "letters of reprimand and admonishment and the denial of training are not actionable adverse employment actions"); Campbell v. Sch. Dist. of Chester Cnty., C/A No. 0:09-411-CMC-PJG, 2011 WL 167464, at *5 (D.S.C. Jan. 19, 2011) (indicating that admonishment or scolding "is not disciplinary action which would rise to the level of an adverse employment action"); see also Ferris v. Accuscribe Transcription Services, LLC, C/A No. 2:07-3281-JFA-BM, 2010 WL 360689, at *9 (D.S.C. Jan. 26, 2010) (manager's condescending tone fails to constitute adverse action). Durant's complaints about Baker's August 2011 e-mail, as well as her assertions

that he spoke to her in a condescending manner, failed to recognize her accomplishments at sales meetings, and required her to complete a daily cash balance report that took approximately less than a minute to complete, simply do not rise to the level of affecting the terms, conditions, and benefits of Durant's employment. See Ellerth, 524 U.S. at 761; Holland, 487 F.3d at 219.

### 2. Harassment/Hostile Work Environment

Nor can Durant make out a *prima facie* case of racial harassment, which requires her to show that: (1) she experienced unwelcome harassment; (2) the harassment was based on her race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. Baqir v. Principi, 434 F.3d 733, 745-46 (4th Cir. 2006). A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks & citations omitted) (Title VII). However, "[w]orkplaces are not always harmonious locales." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (Title VII). Moreover, federal employment statutes are not "general civility code[s]." Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (Title VII); Shirer v. Tri-County Elec. Co-op., Inc., C/A No. 5:07-1156-MBS, 2009 WL 2900767, at *8 (D.S.C. Sept. 9, 2009) (Title VII & ADEA).

To meet the second element, a plaintiff must show that "but for" one of the protected traits, she would not have been a victim of harassment. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) (Title VII & ADEA). The federal anti-discrimination statutes do not protect employees from hostility and abuse from their supervisors unless the objectionable conditions occur because of a



protected characteristic. See Graham v. Prince George's Cnty., 191 F. App'x 202, 204 (4th Cir. 2006) (finding the district court did not err in determining that "although [the] facts reflected an unpleasant working environment, they did not support a hostile one based on an unlawful characteristic"); see also Oncale, 523 U.S. at 80; Shirer, 2009 WL 2900767, at *8.

Moreover, in a hostile work environment case, the behavior must rise to the standard of being so "severe" or "pervasive" so as to create an abusive working environment. Harris, 510 U.S. at 21; see also Baqir, 434 F.3d at 746. When analyzing this element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal statements; and whether it unreasonably interferes with an employee's work performance. See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also Sunbelt Rentals, Inc., 521 F.3d at 315-16 (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

Durant's hostile work environment claim fails because she cannot establish either that the alleged harassment was severe and pervasive or that it was based upon her race. Durant bases her harassment claim on essentially four incidents: (1) Baker's August 2011 e-mail; (2) Baker's requiring her to submit reports that Caucasian branch managers were not required to submit;[3] (3) Baker's comment about "those people" cashing tax refund checks; and (4) Baker's lack of

---

[3] Notably, SAFE presents undisputed evidence that another African-American branch manager under Baker's supervision was also *not* required to submit the daily reports, undermining Durant's position that race motivated Baker in this regard.

Page 11 of 18



consideration for her childcare issues. (Pl.'s Mem. Opp'n Summ. J. at 34, ECF No. 39 at 34.) None of these incidents, either alone or collectively, rises to the severe and pervasive level the law requires to state a claim of hostile work environment. See Patton v. Indianapolis Pub. Sch. Bd., 276 F.3d 334, 339 (7th Cir. 2002) (finding that allegations that she was treated by her supervisor in a "rude, abrupt, and arrogant" manner and subjected to "stern and severe criticism" fell "far short of creating an actionable hostile work environment"); cf. Walker v. Mod-U-Kraf Homes, LLC, __ F.3d __, 2014 WL 7273031 (4th Cir. Dec. 23, 2014) (reversing district court's grant of summary judgment on a sexual harassment claim but characterizing the determination as a "close question" where the plaintiff was subjected almost daily to sexual comments and actions by co-workers such as a male co-worker regularly grabbing his crotch and saying "these nuts are looking for you"; referring to the plaintiff as "fresh meat"; and suggesting that if another male co-worker "want[ed] a blow job" he should go join the plaintiff where she was working). And none is overtly racist or even reasonably possesses any racial undertone. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (stating that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal quotation marks and citations omitted); Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 190 (4th Cir. 2004) (affirming summary judgment on a hostile work environment claim where the record contained no evidence of racially offensive conduct toward the plaintiff); cf. Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001) (holding that supervisor's constant, even daily, use of racial epithets was sufficiently severe or pervasive to survive summary judgment). Durant's allegations of a hostile work environment simply do not rise to the severe and pervasive level that the Fourth Circuit has found warrants a trial. Cf. E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d

167, 176 (4th Cir. 2009) (finding alleged gender-based and race-based harassment was sufficiently severe or pervasive where co-workers referred to women as b* * *hes and a co-worker in a cubicle next to the plaintiff had Playboy items, watched pornography in front of her, had a pornographic screensaver, and placed a screwdriver in a Halloween decoration in a sexual manner and where co-workers used racial epithets, some directed at the plaintiff, and two co-workers "kept blue-colored mop-head dolls in their offices which they had hanging by nooses tied around the dolls' necks"); Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001) (holding that supervisor's constant, even daily, use of racial epithets was sufficiently severe or pervasive to survive summary judgment); Smith v. First Union Nat'l Bank, 202 F.3d 234 (4th Cir. 2000) (concluding that "a barrage of threats and gender-based insults" that the plaintiff's supervisor directed at her and that occurred more than thirty times in the first few weeks of the plaintiff's employment was sufficiently severe or pervasive to survive summary judgment); Amirmokri v. Baltimore Gas & Elec. Co., 60 F.3d 1126, 1131 (4th Cir. 1995) (finding the alleged harassment was sufficiently severe or pervasive because an Iranian plaintiff was called "names like 'the local terrorist,' a 'camel jockey' and 'the Emir of Waldorf' " on an almost daily basis). Accordingly, SAFE is entitled to summary judgment on Durant's harassment claim.

### 3. Retaliation

Generally, the requisite elements for a prima facie case of retaliation require a plaintiff to show: (1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action. Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007).



"Protected activity" under the statute falls into one of two categories: opposition or participation. Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271 (2009); Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003) (stating that to establish that a plaintiff engaged in protected opposition activity, she must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring). To have engaged in protected opposition activity, a plaintiff must have conveyed to the employer a *reasonable* belief that the actions complained of violated federal law. Jordan v. Alternative Res. Corp., 458 F.3d 332, 340-41 (4th Cir. 2006) (stating that "an employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress") (citing Equal Employment Comm'n v. Navy Federal Credit Union, 424 F.3d 397 (4th Cir. 2005)). The plaintiff must: (1) have a good faith belief that the employer is engaging in an unlawful employment practice; and (2) show that the belief is objectively reasonable. Peters, 327 F.3d at 321.

Although the Fourth Circuit does not appear to have established a firm test or standard for determining the objective reasonableness of an employee's belief that a violation of federal anti-discrimination laws is occurring, its decisions provide some parameters. For example, in Jordan v. Alternative Resources Corporation, 458 F.3d 332 (4th Cir. 2006), the Fourth Circuit determined that a plaintiff's belief that he was reporting a racially hostile work environment was not reasonable where the only incident giving rise to that belief was a co-worker's isolated, racist exclamation in reaction to a news report. The Jordan Court held that the plaintiff could not have reasonably believed that the one-time occurrence constituted a hostile work environment. Id. at 340-43.

On the other end of the spectrum, in EEOC v. Navy Federal Credit Union, 424 F.3d 397 (4th Cir. 2005), the Fourth Circuit reversed a district court's grant of summary judgment on a retaliation claim where the plaintiff had opposed her supervisors' scheme to set an employee up for termination and provide themselves a legal defense in any subsequent litigation by giving her positive performance reviews while simultaneously undertaking heightened scrutiny of the employee's activity to discover an objective and seemingly legitimate basis for her termination. Id. at 402. The district court had found that because the planned retaliatory conduct had not yet occurred, and because the positive performance reviews could not be considered adverse, the plaintiff who opposed the plan could not have reasonably believed she was opposing unlawful conduct. The Fourth Circuit disagreed, finding that the plaintiff held a reasonable belief that the employer was unlawfully retaliating against the other employee and that in failing to go along with her supervisors' plan, the plaintiff acted in opposition to that retaliatory scheme.

An objectively reasonable belief does not require that the underlying discrimination claim be meritorious to prevail on a related retaliation claim. See Peters, 327 F.3d at 321. But other courts facing this issue have required some facts corroborating a plaintiff's subjective, good faith belief before finding that it was objectively reasonable. See, e.g., Johnson v. Mechs. & Farmers Bank, 309 F. App'x 675, 685-86 (4th Cir. Jan. 23, 2009) (holding that the plaintiff held no objectively reasonable belief that his employer engaged in an unlawful employment practice by firing an employee when the employer had hired a consultant to investigate an incident involving that employee and plaintiff simply disagreed with the consultant's conclusions); Coleman v. Loudon Cnty. Sch. Bd., 294 F. App'x 778, 782 (4th Cir. Sept. 29, 2008) (finding the plaintiff held no objectively reasonable belief that the hiring committee was discriminating based on race where



plaintiff offered nothing but her unsubstantiated, self-serving opinions that the panel members discriminated against African Americans and where no dispute existed that the candidate awarded the position was qualified and where the panel gave a clear, legitimate, nondiscriminatory reason for not hiring the African-American candidate that the plaintiff preferred); Jackson v. Nattrass, C/A No. 3:13cv535, 2014 WL 3697505, at *8 (E.D. Va. July 23, 2014) (finding plaintiff held no objectively reasonable belief that the employer discriminated against a black female employee because that employee had not applied for the position awarded to the white male); Hurtt v. Baltimore Cnty., Md., Civil No. JKB-12-445, 2014 WL 583008, at *7 (D. Md. Feb. 10, 2014) (finding no objectively reasonable belief where the plaintiff offered "no basis whatsoever for [the plaintiff] to assert charges of discrimination").

These cases reinforce that the anti-retaliation laws do not "protect employees who, with no more than good faith, complain about conduct that no reasonable person would believe amounts to an unlawful employment practice." Jordan, 458 F.3d at 342. Here, Durant presents nothing more than her unsupported speculation that Baker's alleged use of a condescending tone, his e-mail scolding her for not attending a community event, his requirement that she submit daily cash balance reports, and his alleged insensitivity to her childcare issues were motivated by her race.[4] No objective factors support her subjective, presumably good faith belief in that regard. Nor could she reasonably have believed that these incidents constituted the type of adverse actions prohibited by federal law. Accordingly, the court concludes that she cannot demonstrate that her complaints to

---

[4] The court analyzed Durant's disparate treatment claim based on her demotion above. Obviously, because the demotion occurred *after* her complaints to Hilton and is also the alleged retaliatory action, it cannot have been the subject of her alleged protected activity on February 9.



Hilton about Baker constituted protected activity within the meaning of Title VII's anti-retaliation provision. She thus fails to establish a *prima facie* case of retaliation.

### 4. Contract Claims[5]

Durant's state law contract claims fail because SAFE's employee handbook contained a conspicuous disclaimer in accordance with South Carolina law. See S.C. Code Ann. § 41-1-110; see also Def.'s Reply Supp. Mot. Summ. J. at 15, ECF No. 41 at 15.)

### RECOMMENDATION

For the foregoing reasons, the court recommends that SAFE's motion for summary judgment (ECF No. 33) be granted as to all claims.[6]

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 16, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[5] Although Durant's complaint contains two contract-based claims, her "bad faith demotion and termination" claim is not a separately recognized cause of action in South Carolina. See Rotec Servs., Inc. v. Encompass Servs., Inc., 597 S.E.2d 881, 883-84 (S.C. Ct. App. 2004) (finding there can be no separate cause of action for breach of covenant of good faith and fair dealing because it is subsumed under the claim for breach of contract).

[6] Because Durant's civil rights claim under 42 U.S.C. § 1981 rises or falls with her Title VII claim, this claim fails as well. See Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985) ("Under Title VII and either § 1981 or § 1983, the elements of the required prima facie case are the same."); see also Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004) (stating that the McDonnell Douglas burden shifting framework, developed for Title VII, has been applied to § 1981 claims).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' "  <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); <u>see</u> Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).