IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Terrie Dawson Durant, | ) | C/A NO. 3:13-626-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION and ORDER** |
| v. | ) | |
| | ) | |
| SAFE Federal Credit Union, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on Plaintiff's complaint asserting violations of Title VII of the

Civil Rights Act of 1964 ("Title VII"), as amended by the Equal Employment Opportunity Act, 42

U.S.C. §§ 2000e, *et seq.*; violation of 42 U.S.C. § 1981; and state law claims for breach of contract

and *"bad faith demotion and termination."* Defendant filed a motion for summary judgment, to

which Plaintiff responded and Defendant thereafter replied. In accordance with 28 U.S.C. § 636(b)

and Local Civil Rule 73.02 (B)(2)(g), DSC, this matter was referred to United States Magistrate

Judge Paige Jones Gossett for pre-trial proceedings and a Report and Recommendation ("Report")

on dispositive issues. On January 16, 2015, the Magistrate Judge issued a Report recommending that

Defendant's motion for summary judgment be granted and this matter be dismissed with prejudice.

ECF No. 43. The Magistrate Judge advised the parties of the procedures and requirements for filing

objections to the Report and the serious consequences if they failed to do so. Plaintiff filed

objections to the Report on February 2, 2015; Defendant filed a reply to Plaintiff's objections on

February 20, 2015.

1

## I. STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

After conducting a *de novo* review as to the objections made, and considering the record, the applicable law, and the Report and Recommendation of the Magistrate Judge, the court agrees with the Report's recommendation that Defendant should be granted summary judgment. Accordingly, the court adopts the Report by reference in this Order except the basis upon which the Report concludes that Plaintiff failed to establish a *prima facie* case of race discrimination.[1] Nevertheless, Defendant is entitled to summary judgment as to all claims.

## II. DISCUSSION

Plaintiff presents four broad objections to the Report. The court reviews Plaintiff's objections below in the order presented in the Report.

### A. RACE DISCRIMINATION

The Report recommends the court grant Defendant's motion for summary judgment on Plaintiff's claim for race-based disparate treatment ("racial discrimination" claim). *See* Report at

---

[1]This conclusion was one of two bases on which the Report relied in recommending summary judgment for Defendant on Plaintiff's disparate treatment claim.

6-10. This recommendation is based on the Report's determination that Plaintiff failed to proffer sufficient evidence to meet two of the four elements of her *prima facie* case. See *id.* (concluding Plaintiff failed to proffer evidence sufficient to establish that (1) she was meeting Defendant's legitimate expectations, and (2) the challenged actions constituted adverse employment actions).

Plaintiff objects to this recommendation on three bases. First, she contends the Report improperly disregarded evidence she was meeting Defendant's legitimate employment expectations. Obj. at 9, ECF No. 44 (citing her pre-demotion performance appraisals). Second, she maintains the Report improperly failed to consider the collective impact of the challenged incidents. *Id.* at 9-10 ( arguing that "viewed collectively" the incidents "directly affected the terms, conditions and privileges" of her employment). Finally, Plaintiff argues the Report errs in failing to address her argument that she was treated differently from a white comparator. *Id*. at 10.

For the reasons outlined below, the court finds Plaintiff has failed to establish a *prima facie* case of race discrimination.

### 1. Legal Standard – Prima Facie Test

To establish a *prima facie* case of disparate treatment, Plaintiff must establish: (1) she is a member of a protected class, (2) she was qualified for her job and her performance was satisfactory, (3) despite her qualifications she was removed from her branch manager's position and placed in the MSC II position, and (4) she was treated differently from similarly situated employees outside the protected class. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

### 2. Employer Expectations

In concluding that Plaintiff failed to establish she was meeting her employer's legitimate expectations, the Report relies on Plaintiff's 2011 Performance Review ("2011 Review") and

3

testimony from Michael Baker (Baker), Plaintiff's supervisor, that as early as January 2012, he was considering demoting Plaintiff to a non-managerial position. Although the 2011 Review covers the 2011 calendar year, it is unclear whether it was prepared prior to Plaintiff's contact with the EEOC. *See* 2011 Review, ECF No. 33-2 at 67 (noting review was "as of December 31, 2011" but indicating a "CEO Review" on February 23, 2012); ECF No. 39-5 at 3 (EEOC "Charge of Discrimination," dated February 16, 2012). Other evidence in the record indicates Plaintiff's most recent performance review as of the date of her demotion (February 10, 2012), was the performance review prepared for calendar year 2010. *See* Depo. of Beverely Gagne at 81, ECF No. 41-5.

On March 4, 2009, Plaintiff signed a copy of her 2008 Performance Review. *See* ECF No. 33-2 at 42. This review covered calendar year 2008, which included seven months' evaluation of her previous position as an "MSR/LI" and five months' evaluation as Bishopville Branch Manager. *See id*. at 40. Plaintiff received an overall score of 3.29. *Id*.[2] The 2009 performance evaluation contains the notation that "[a]verage score must exceed 2.74 for pay progression advance." *Id*.

On March 30, 2010, Plaintiff signed a copy of her 2009 Performance Review. *See* ECF No. 33-2 at 48. This review covered calendar year 2009. Plaintiff received an overall score of 3.16. *Id*.

In either February or March 2011, Plaintiff received a copy of her 2010 Performance Review. *Compare* ECF No. 33-2 at 57 (Plaintiff's signature appears, but no date) *with id*. at 65 (Plaintiff and Baker's signature appear next to the date February 4, 2011). This review covered calendar year 2010. Plaintiff received an overall score of 3.01.[3]

---

[2]This performance review does not include the same objectively-measured categories as are included in her subsequent reviews.

[3]It appears Plaintiff's 2010 score may have been incorrectly calculated. Based upon a review of the applicable "scoring chart," *see* ECF No. 33-2 at 43 & 44, it appears Plaintiff should have

4

Defendant uses these scores to argue that Plaintiff's performance was steadily declining throughout her tenure as Branch Manager.[4]  However, Defendant determined that Plaintiff's 2010 performance warranted a monetary bonus.  On February 23, 2011, Plaintiff received a seven percent (7%) bonus for 2010.  *See* Ex. 9 to Pla's Mem. Opp., ECF No. 39-9 at 2.  The email from Baker notifying Plaintiff of the bonus ends with "Thanks for a very productive year!"  *Id.*

Despite Baker's testimony regarding discussions about moving Plaintiff out of her position, given the more favorable 2010 performance review, the award of a bonus for her 2010 efforts, the fact that at least in 2009, Defendant deemed that an average score of at least 2.74 warranted a "pay progression advance," and the questionable timing of the 2011 Review, the court finds that for purposes of this order, Plaintiff was meeting her employer's legitimate expectations at the time of her demotion.

### 3.  Adverse Employment Action

Plaintiff contends that she suffered adverse employment actions in the form of several instances of disparate treatment by Baker and in her demotion in February 2012.  The Report addresses Plaintiff's assertions regarding the August 2011 email, the claim that Baker spoke to her in a condescending manner, Baker's alleged failure to recognize her accomplishments at sales meetings, and a requirement that she complete a daily cash balance report.  *See* Report at 9-10 (concluding that these incidents do not rise to the level of acts affecting the terms, conditions, and

---

received a slightly higher score on "Responsibility #1" of "Essential Job Responsibilities." Applying the correct scores to Plaintiff's rating for meeting annual goals for loans (3 instead of 1) and checking accounts (5 instead of 3), it appears that her overall score for this responsibility should have been a 4.5 instead of 3.  This would have raised her total final score to 3.22 versus 3.01.  However, Plaintiff did not and does not challenge the 2010 score.

[4]See note 3, *supra*.

5

benefits of Plaintiff's employment).

Plaintiff argues in her Objections that, viewed collectively and considering the unjustified basis for the scoldings and admonishments, these incidents should be found to constitute adverse employment action. Obj. at 10. Beyond this conclusory argument, Plaintiff offers nothing to support an inference that the collective effect of these encounters amounts to an adverse employment action.[5] However, even accepting Plaintiff's characterization of the scoldings and admonishments as unjustified and considering the collective effect of all of the alleged incidents, the court agrees with the Report that the incidents did not affect the terms, conditions or benefits of Plaintiff's employment and, consequently, do not amount to an adverse employment action. Report at 8-10 (discussing Plaintiff's specific allegations and cases holding that scoldings, admonishments, and condescension are not actionable adverse employment actions).

However, the Report fails to acknowledge or discuss Defendant's concession that for purposes of summary judgment, "Plaintiff's transfer to the [call center] position constitutes an adverse employment action." Dft's Mem. Supp. Summ. J. at 11 n.17, ECF No. 33-8. Therefore, for summary judgment purposes, Defendant's concession works to establish the third prong of Plaintiff's *prima facie* case: that Plaintiff suffered an adverse employment action.

**4. Treated Differently From Similarly Situated Employees Outside the Protected Class**

To establish the fourth prong of a *prima facie* case, Plaintiff must present evidence that a similarly situated person outside of her protected class was treated in a more favorable manner.

---

[5]Plaintiff does not, for example, challenge the Report's assumption that the daily cash balance report could be completed in roughly a minute. *See* Report at 10 (accepting Defendant's assertion stating that it "took approximately less than a minute to complete" the daily cash balance report). While the evidentiary basis for this assertion is not clear, Plaintiff has not presented any evidence that completion of this report imposed more than a *de minimis* burden on her work day.

Specifically, valid comparators are individuals outside the protected class who were similarly situated to her in all materially relevant respects and who Plaintiff claims were treated more favorably under apparently similar circumstances. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) (citing *Bryant v. Hell Atlantic Maryland, Inc.*, 288 F.3d 124, 133 (4th Cir. 2002)). *See also Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (stating that "plaintiffs are required to show that they are similar in all relevant respects to their comparator"). To establish a comparator, a plaintiff must

> show that [she is] similar in all relevant respects to [her] comparator. Such a showing would include evidence that the employees dealt with the same supervisor, were subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Haywood*, 387 F. App'x at 359 (argued but unpublished) (internal quotation marks and citations omitted). *See also McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) (finding that comparator employees must have a "situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.").

Plaintiff argues that Sharon Criminger (WF) (Criminger) is a valid comparator because she held the same position as Plaintiff (she was Plaintiff's direct predecessor in the branch manager position) and upon determination by Defendant that she had performance "issues," Pl's Mem. Opp. Summ J. at 20, Criminger transferred into another management position, which provided Criminger "similar pay, managerial authority, and promotional opportunity within SAFE's Management structure . . . ." *Id*.

In its summary judgment motion, Defendant contends Criminger is not a valid comparator because the circumstances surrounding the respective transfers from the Bishopville Branch Manager

7

position "are too different to provide a meaningful comparison and raise a rational inference of race discrimination." Dft's Mem. Supp. Summ. J. at 14.  Defendant acknowledges that both Plaintiff and Criminger served in the same position (Bishopville Branch Manager),  and there is no question that both Plaintiff and Criminger were supervised by Baker.  Defendant also posits that both struggled in managing the same branch office, "particularly with respect to meeting SAFE's sales and lending goals." *Id*.  Plaintiff testified that the Bishopville branch struggled to meet its goals relating to "loan volume and mortgages."  *See* Depo. of Terrie Dawson Durant (hereinafter "Durant Depo.") at 108; *see id*. at 110 (acknowledging Bishopville's loan volume as not meeting Defendant's "expectations").

In distinguishing Criminger's circumstance, Defendant argues Criminger was transferred into a lower-level, lower-paying management position because it was vacant at the time of Criminger's transfer and "because Ms. Criminger had previously been successful in that position."  Dft's Mem. Supp. Summ. J. at 15.  Defendant maintains that "SAFE presented undisputed testimony that no managerial or [the position held by Plaintiff prior to her promotion to branch manager] positions were vacant at the time of Plaintiff's transfer request [February 9 or 10, 2012] and the MSC II position offered to Plaintiff was the highest available position."  Reply at 7, ECF No. 41.  Additionally, Defendant takes the position that Plaintiff "adamantly refused to continue" to work under Baker's supervision, and that she requested a transfer.  *Id*. at 6.  *See* Depo. of Michael Baker at 141, ECF No. 33-3 (Plaintiff "mentioned that she [ ] didn't want to work for me any longer . . . ."); Depo. of Paul Hilton at 55, ECF No. 33-5 ("She stated that she did not want to work for Mr. Baker any more."); Depo. of Beverly Gagne at 70, ECF No. 33-6 ("She was adamant that she did not want to work for Michael and would not work for Michael.").  Finally, Defendant argues that the

8

transfer decisions were made by different individuals: Defendant contends that Criminger is not a valid comparator because "the decision to transfer Plaintiff was made by Mr. Hilton and Ms. Gagne, not by Mr. Baker." Mem. Supp. Summ. J. at 15.

Plaintiff does not dispute that she requested a meeting with Hilton, reported that Baker was making it difficult for her to do her job, and asked for a transfer. She testified that she told Hilton she believed Baker was discriminating against her in this regard because of her race. However, Plaintiff testified in her deposition that she "never said that I couldn't work with Michael or for Michael," Durant Depo. at 244, and that she told individuals involved in the initial meeting on February 10, 2012, (Hilton, Baker, and Penny Pratt) that she would "go back to the branch . . . until something else comes open, and then [she would] apply[,]" *id*. at 243. Therefore, the evidence in the light most favorable to Plaintiff is that while she did complain of Baker's actions and request a transfer, she did *not* refuse to continue to work for Baker. *See United States v. Bergbauer*, 602 F.3d 569, 574 (4th Cir. 2010) (court must draw reasonable inferences in the light most favorable to the nonmoving party).

However, drawing all reasonable inferences in Plaintiff's favor, the court finds Criminger is not a valid comparator. First, Plaintiff fails to show Criminger requested a transfer and (if she did) subsequently was allowed to remain in her position as branch manager. Second, Plaintiff fails to provide evidence of another open management or an "MSC/LI" position – the position that Plaintiff held prior to her promotion to branch manager – into which Defendant could have transferred her.[6]

_____

[6]There is evidence in the record of an open Membership Development Officer position for which Plaintiff applied in January 2012. Plaintiff subsequently withdrew her application, but in the initial meeting on February 10, 2012, Plaintiff was asked whether she "would be willing to still interview" for that position. Plaintiff replied in the affirmative. Durant Depo. at 245. There is no evidence that this position was a management position or that Gagne would have transferred Plaintiff

As to Defendant's argument that there were different decision-makers, Baker testified that as to Criminger, he "approached both Paul and [Baker's direct supervisor] about the possibility of moving her . . . ." Depo. of Michael Baker at 108. *See also id*. at 108-09 ("So you recommended Ms. Criminger be moved from a branch manager position to office manager position?" "Yes."). As to Plaintiff, Baker testified that he met with Hilton and the same direct supervisor about moving Plaintiff as early as January 2012. Additionally, Hilton met with Baker upon his return from the meeting with Plaintiff on February 9, 2012. Moreover, Baker was included in the personnel involved in the meetings on February 10, 2012. Accordingly, Baker at least had input into the decision-making process although it does appear Gagne made the ultimate decision. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992) (to establish *prima facie* case, an employee generally must show that comparator was subject to action by same supervisor or decision-maker).[7]

Therefore, Plaintiff has failed to show she was treated differently from a similarly situated employee outside the protected class. Accordingly, Plaintiff has failed to make out a *prima facie* case of race discrimination.

---

into that position ahead of other qualified applicants.

[7]"[W]hen different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) (citation and quotations omitted). *See also Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F. App'x 255, 257 (4th Cir. 2007) (if different decision-makers are involved, employees are generally not similarly situated). The Fourth Circuit has not issued a published opinion on this issue; however, several unpublished cases have cited *Mitchell* with approval: *Atkins v. Holder*, 529 F. App'x 318, 321 (4th Cir. 2013); *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010); *Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F. App'x 255 (4th Cir. 2007); *Heyward v. Monroe*, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998) (Table); *Edwards v. Newport News Shipbuilding & Dry Dock Co.*, 166 F.3d 1208, 1998 WL 841567, at *3 (4th Cir. 1998) (Table).

### 5. Conclusion – Race Discrimination Claim

Because Plaintiff fails to establish a *prima facie* case of race discrimination, Defendant is entitled to summary judgment on Plaintiff's claim of race discrimination, and it is dismissed with prejudice.

### B. HOSTILE WORK ENVIRONMENT

Plaintiff objects to the recommendation that the court grant summary judgment on her claim for hostile work environment. That recommendation rested on the conclusion that the acts alleged were not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment or to create an abusive work environment. Report at 10-11. Plaintiff offers only a conclusory argument that the same incidents discussed above (condescending tone, scolding email, requirement that she complete daily cash balance reports, and insensitivity to childcare issues) combined with Baker's alleged "pattern" of making racist remarks is sufficient to establish a hostile environment claim. *See* Obj. at 11 (contending "[t]his pattern of behavior, when viewed in its totality, created working conditions which were intolerable."). The court disagrees.

Plaintiff testified to a luncheon meeting with Baker where she discussed with him how to handle credit union members coming in seeking to cash large tax refund checks. She indicated that:

> Then he sort of kind of went off on a rant about how these people, those people basically they – it just gets on my nerve how they get all this money back and they don't pay all the taxes in it to require them to get this money –
>
> And with him having said that, it made me feel very uncomfortable because I know that I'm in Lee County in a predominantly black area. So I took that sort of like he was referring to the black people in the area.
>
> Q. Well, he didn't say the black people in the area, did he, Ms. Durant?
>
> A. He said "those people."

11

Durant Depo. at 136-37.

Plaintiff makes no showing regarding a "pattern" of making "racist remarks." A one-time reference to "those people" is an ambiguous statement that, at most, raises a weak inference of some generalized race-based animus. A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

Therefore, for reasons fully explained in the Report, the alleged incidents are not sufficiently severe or pervasive to support a hostile work environment claim. Neither is there sufficient evidence to support the conclusion that any of the incidents were racially motivated. Defendant is entitled to summary judgment on Plaintiff's claim of hostile work environment and it is dismissed with prejudice.

## C. RETALIATION

Plaintiff objects to the Report's recommendation that the court find she has failed to proffer sufficient evidence to allow her retaliation claim to proceed. Plaintiff argues that in addition to the discreet events discussed in the Report (Baker's alleged use of a condescending tone, his requirement that Plaintiff complete certain daily reports, an email from Baker to Plaintiff on August 15, 2011, and Baker's alleged insensitivity to her childcare issues, *see* Report at 16), Baker also had a "pattern of making racists remarks regarding African Americans to Plaintiff referencing such terms as 'these people' when referring to Defendant's African American clientele," Obj. at 5, and also required that she adhere to "differing job requirements from her Caucasian Counterparts," *id*. Plaintiff contends that she engaged in protected activity by directly complaining to the Vice President of Human Resources, Paul Hilton (Hilton), that Baker treated her differently "because she was black," *id*. at

5. Plaintiff argues that this evidence, coupled with the other above-referenced incidents, creates a genuine issue of material fact regarding her retaliation claim.

As noted in the Report, to establish a *prima facie* case of retaliation, a plaintiff must generally show: (1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action. *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). The Report recommends summary judgment be granted because Plaintiff has not proffered evidence sufficient to establish that she engaged in protected activity.

"Protected activity" under the statute falls into one of two categories: opposition or participation. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271 (2009); *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003) (stating that to establish that a plaintiff engaged in protected opposition activity, she must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring). To have engaged in protected opposition activity, a plaintiff must have conveyed to the employer a reasonable belief that the actions complained of violated federal law. *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 340-41(4th Cir. 2006) (stating that "an employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress") (citing *Equal Employment Comm'n v. Navy Federal Credit Union*, 424 F.3d 397 (4th Cir. 2005)). The plaintiff must: (1) have a good faith belief that the employer is engaging in an unlawful employment practice;[8] and (2) show that the belief is objectively reasonable. *Peters*,

---

[8] The "unlawful employment practices" that an employee can oppose, and thereby be protected from retaliation, include practices that "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

327 F.3d at 321.

Plaintiff has proffered evidence that she complained to Hilton that Baker was treating her differently from other branch managers because she was black.[9]  The Report and this court accept as true both that Plaintiff subjectively believed that her supervisor's treatment was racially motivated and that she reported all of the alleged mistreatment that she claims to have reported.  The critical question, therefore, is whether Plaintiff's subjective belief was objectively reasonsable.

As noted in the Report, the test for objective reasonableness is not firmly established in the Fourth Circuit.  Report at 14.  However, it is undisputed that a mere subjective belief is not enough.  *See* Obj. at 5 (conceding Plaintiff must establish that her belief "was objectively reasonable in light

---

race." 42 U.S.C. § 2000e-2(a)(1).  Such discrimination includes maintaining a racially hostile work environment, that is, a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986) (internal quotation marks omitted)).  Courts determine "whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' "  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris*, 510 U.S. at 23).  "A recurring point in these opinions is that simple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Faragher*, 524 U.S. at 788 (citations and internal quotation marks omitted).

Unlike other, more direct and discrete unlawful employment practices, hostile work environments generally result only after an accumulation of discrete instances of harassment.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct. . . .  Such claims are based on the cumulative effect of individual acts"); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir.2001).

[9]Plaintiff argues that a credibility issue is created by Hilton having destroyed the original notes he took during his February 9, 2012, meeting with Plaintiff.  *See* Obj. at 6.  Even if the destruction of the notes raised a credibility issue, the court has accepted that Plaintiff told Hilton that she believed Baker was making it difficult for her to accomplish her job because she was black.

of the facts.").

Plaintiff relies on allegations that Baker used a condescending tone in conversations with her, sent her a scolding email in August 2011, required that Plaintiff complete certain daily cash balance reports, and was insensitive to her childcare issues. *Id.* (noting these are "undeniably part of the basis of Plaintiff's Complaints."). Rather than pointing to any aspect of this treatment that would provide evidence of an objectively reasonable belief that this treatment was racially motivated, Plaintiff relies on Baker's "pattern of making racists [sic] remarks regarding African Americans[,]" differing job requirements for her "Caucasian Counterparts," and her statement to Hilton that she believed she was "treated differently because she was black" as support for the objective reasonableness of her claim of racial discrimination. *Id.*

These claimed circumstances do not support an objectively reasonable inference that Baker's treatment of Plaintiff was racially motivated. First, as discussed above, Plaintiff makes no showing that Baker participated in a "pattern of making racist remarks." Second, Plaintiff's claim of differing job requirements is not supported by the evidence. The last claimed circumstance (that Plaintiff reported to Hilton that she was treated differently because of her race) is Plaintiff's statement of her subjective belief, and is not evidence of objective reasonableness.

Therefore, while the precise standard for determining objective reasonableness may be an open issue,[10] Plaintiff's evidence cannot establish objective reasonableness under any standard as

---

[10] Defendant cites the case of *Boyer-Liberto v. Fontainbleau Corp*, 752 F.3d 350 (4th Cir. 2014), *r'hrg en banc granted*, July 1, 2014, for the proposition that the number of instances of race-related harassment "is particularly important in determining whether a hostile work environment exists." Mem. Supp. Summ. J. at 23. However, *Boyer-Liberto* was vacated even before Defendant filed its summary judgment motion. Rehearing *en banc* was held September 18, 2014. As of the date of this Opinion and Order, the Fourth Circuit has not reissued an opinion in *Boyer-Liberto*.

she has offered no evidence that could lead a reasonable person to believe that the alleged offending conduct was racially motivated.

For these reasons and the reasons discussed by the Magistrate Judge, Plaintiff's claim for retaliation fails, and it is dismissed with prejudice.

### D. STATE BREACH OF CONTRACT CLAIM[11]

The Report recommends that the court grant summary judgment on Plaintiff's breach of contract claim because Defendant's employee handbook contains a conspicuous disclaimer. Report at 17 (citing S.C. Code Ann. § 41-1-110 and Defendant's discussion of same in its reply). Plaintiff argues her handbook-based claim survives because despite the conspicuous disclaimer, Plaintiff relied on "specific promissory language" in the handbook. Obj. at 6-7 (relying on *Hessenthaler v. Tri-County Sister Help*, 616 S.E.2d 694, 697 (S.C. 2005)). Plaintiff argues that she relied upon specific promises in the handbook that should she report her concerns to Human Resources "if she felt she was being discriminated against or harassed on the basis of her race[,]" those concerns would be investigated without fear of retaliation. *Id*. at 7.

Plaintiff ignores the impact of S.C. Code § 41-1-110 on the holding of *Hessenthaler*. This statute provides as follows:

> It is the public policy of this State that *a handbook*, personnel manual, policy, procedure, or other document *issued by an employer or its agent after June 30, 2004, shall not create an express or implied contract of employment if it is conspicuously disclaimed.* For purposes of this section, a disclaimer in a handbook or personnel

---

[11]As noted by the Report, although Plaintiff's complaint contains two contract-based claims, her "bad faith demotion and termination" claim is not a separately recognized cause of action in South Carolina. *See Rotec Servs., Inc. v. Encompass Servs., Inc.*, 597 S.E.2d 881, 883-84 (S.C. Ct. App. 2004) (finding no separate cause of action for breach of covenant of good faith and fair dealing because it is subsumed under the claim for breach of contract). Plaintiff offers no argument in her Objections to dispute this finding.

> manual must be in underlined capital letters on the first page of the document and signed by the employee. For all other documents referenced in this section, the disclaimer must be in underlined capital letters on the first page of the document. *Whether or not a disclaimer is conspicuous is a question of law.*

S.C. Code Ann. § 41-1-110 (effective March 15, 2004) (emphasis added).[12]  Plaintiff has offered no argument as to why this section would not preclude her handbook-based claim and the court finds none evident in the record.  *See also* Dft's Reply in Supp. of Summ. J. at 14-15, ECF No. 41 (addressing interplay of S.C. Code Ann. § 41-1-110 and *Hessenthaler*); *Karoue v. Blue Cross Blue Shield of S.C.*, C.A. No. 3:13-cv-1844-JFA-KFM, 2014 WL 792140 at *4 (D.S.C. Feb. 25, 2014) (relying on Section 41-1-110 in granting summary judgment in favor of employer on handbook-based claim).

Accordingly, for reasons stated in the Report, Plaintiff's breach of contract claim fails and it is dismissed with prejudice.

## IV. CONCLUSION

Having conducted a *de novo* review of the Report and underlying motion and related memoranda, and having fully considered Plaintiff's objections, the court adopts the recommendations of the Report in full.  The court also adopts the Report's rationale except as to the second and third prongs of the *prima facie* case of race discrimination.  Defendant's motion for summary judgment is **granted** and this matter is dismissed with prejudice.

---

[12]Section 41-1-110 was mentioned in *Hessenthaler* but did not control in that case because of its then-recent passage.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON McGOWAN CURRIE
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 4, 2015